# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHL VARIABLE INSURANCE CO., <br><br> Plaintiff, <br> v. <br> THE ABRAMS FAMILY IRREVOCABLE LIFE INSURANCE TRUST, by and through its trustee, H. Bruce Abbott, <br><br> Defendant. | Case No. 10cv521 BTM (POR) <br><br> **ORDER RE MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Defendant The Abrams Family Irrevocable Life Insurance Trust ("Trust") moves to dismiss a declaratory judgment action brought by Plaintiff PHL Variable Insurance Company ("Phoenix"). For the reasons that follow, this motion is **GRANTED** without prejudice.

## I. BACKGROUND

On November 24, 2007, Defendant submitted an application to Phoenix seeking a life insurance policy insuring the life of Howard Abrams. (First Amended Complaint ("FAC") ¶ 19) Defendant represented that Abrams had a net worth of $23,652,000 and an annual earned income of $150,000. (FAC ¶ 19) As part of the application process, Defendant also executed a Statement of Client Intent form which stated that the insurance was sought for estate planning purposes, that premiums would not be financed, that Abrams would be the funding source for the premiums, and that there was no understanding that the policy would

be sold and/or transferred to third parties. (FAC ¶ 22) Phoenix accepted this application and issued a life insurance policy to the Trust for a $10,000,000 death benefit with an effective date of March 15, 2008. (FAC ¶ 24)

Nearly two years later, on March 3, 2010, Phoenix sent letters requesting documents from Abrams, the Trustee, and the insurance agent who sold the Policy to verify that the financial representations contained in the application were true and correct. (FAC ¶ 25; Mem., Exh B) These letters received no response. (Mem. at 8) Nevertheless, Phoenix asserts that based on its "own independent investigation," Defendant had misrepresented his net worth and annual income on this application. (FAC ¶ 25) Phoenix also claims "[u]pon information and belief" that the policy was procured for an illegal purpose of re-sale to strangers on the secondary market. (FAC ¶ 6)

On March 10, 2010–four days before the expiration of the policy's two-year contestability period, Phoenix brought this declaratory judgment action under 28 U.S.C. § 2201 seeking a judgment that the policy is null, void, and rescinded *ab initio* due to fraudulent and/or material misrepresentations and omissions that Defendant made on the life insurance application.[1] (FAC ¶ 29) Phoenix also seeks a declaratory judgment pursuant to Section 483(c) of the California Insurance Code that Defendant is not entitled to a return of policy premiums due to actual fraud or in the alternative, a judgment allowing Phoenix to retain premiums to the extent that it will allow Plaintiff to return to its pre-contract position. (FAC ¶ 31)

## II. STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must meet the requirements of Rule 8(a)(2), which requires the pleader to make a "short and plain statement of the claim." This motion should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory.

---

[1] The Court has jurisdiction over all parties of this lawsuit on grounds of diversity under 28 U.S.C. § 1332(a)(1).

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).   Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S,Ct. 1937, 1950 (2009) (internal quotation marks omitted).

### III. DISCUSSION

Defendant asserts two main grounds for dismissal:  (1) Plaintiff's claims lack factual support sufficient to comply with Fed. R. Civ. P. 8(a)(2)'s pleading requirements; and (2) Plaintiff violated California law by failing to contest the policy within two years.  Defendant also seeks dismissal under Rule 11(b) and in its reply brief, invites the Court to impose sanctions under Rule 11 *sua sponte*.  The Court addresses these arguments in turn.[2]

**A.  Fed. R. Civ. P. 8(a)(2)**

Plaintiff brings a single count for rescission based on allegations of material misstatements in Abrams' insurance application.  These allegations fall short of Rule 8(a)(2)'s pleading requirement, as clarified in *Twombly* and *Iqbal*.

First, Plaintiff attempts to substantiate its assertion that Abrams misstated his net worth and annual income on the grounds that (1) Defendant did not respond to a request

---

[2] Because the Court grants Defendant's motion to dismiss, it need not address the argument that Plaintiff cannot seek to retain the premiums if the policy is rescinded.

made nearly two years after his application was accepted to verify that these financial representations were correct and (2) its "own independent investigation did not reveal any basis on which a person could reasonably conclude that Abrams had a net worth of $23,652,000 or annual earned income of $150,000 on the date of the application." (FAC ¶ 25)

As to the former ground, Defendant's failure to respond to Plaintiff's request for documentation, alone, does not mean that representations in Defendant's application were false when made. Plaintiff does not raise a breach of contract claim, and thus, its assertion that Defendant had a contractual obligation to respond to this letter does not control the question of whether Plaintiff stated a claim for rescission based on material misstatements.

As to the latter ground, Plaintiff provides no details as to what its "independent investigation" entailed and the facts the investigation uncovered which led it to conclude that Defendant's statements in the application were false. Without these details, Plaintiff states nothing more than a legal conclusion that it was the victim of fraud. Such a bare legal conclusion is insufficient to meet Rule 8's pleading requirements. *See Eason v. IndyMac Fed. Bank, FSB*, No. CV 09-1423, 2009 U.S. Dist. LEXIS 82523 (D. Ariz. Sept. 2, 2009) (citing *Iqbal*, 129 S.Ct. at 1949).

Second, Plaintiff asserts "[u]pon information and belief, the policy at issue in this case was procured from Phoenix in furtherance of a STOLI [stranger-owned life insurance policy] scheme."[3] (FAC ¶ 4) However, Plaintiff's complaint fails to provide any details to show that

---

[3] A commentator provides the following summary of STOLI schemes: "STOLI transactions occur when elderly persons who do not already own life insurance decide to purchase a policy at the behest of investors and brokers. The investors initiate the life insurance transactions with strangers at the point of sale. . . . The target population is wealthy people who are 65 years or older with a limited life expectancy. The targeted consumer agrees to purchase a life insurance policy with a large face value with funds provided by the investor through an outside financial institution. A two-year non-recourse loan is typically used to purchase the policy and to fund the insured's payment of premiums. At the end of two years, the policy is usually assigned to the investor. The assignment functions, to some extent, as a repayment of the initial loan plus interest. While assignment of the policy is not technically required, it is inevitable given the size of the loan plus interest and premiums an insured would have to repay and continue to pay if he chose to maintain the policy." Eryn Matthews, Note, *STOLI on the Rocks: Why States Should Eliminate the Abusive Practice of Stranger-Owned Life Insurance*, 14 CONN. INS. L.J. 521, 525-527 (2008). Plaintiff asserts that such policies procured by the insured for resale on the secondary market

Defendant bought the policy for the purpose of re-selling it to strangers on the secondary market or any other details to show how Defendant's Statement of Client Intent form was false or misleading. "The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 129 S. Ct. at 1954., Plaintiff's mere assertion of an illegal STOLI scheme is not sufficient to survive a motion to dismiss.

Therefore, the Court **GRANTS** Defendant's motion to dismiss without prejudice. Because, as set forth below, the Court denies Defendant's motion to dismiss on the ground that Plaintiff failed to properly contest the policy within the meaning of California's contestability statute, Plaintiff's failure to provide factual support sufficient to state a claim under Fed. R. Civ. P. 8(a)(2) may be cured in an amended complaint.

**B. Contestability Statute**

As an alternative ground for dismissal, Defendant argues that Plaintiff failed to comply with California's contestability statute, which requires that a life insurance policy issued in the state contain a provision stating that the policy cannot be contested more than two years after issuance. *See* Cal Ins Code § 10113.5. However, Defendant does not dispute that the instant action was brought within the expiration of the contestability period. (*See* Mem. at 2 ("[F]our days before the expiration of the Policy's two-year contestability period, PHL commenced this action.")) It appears to be well-settled that commencement of a suit to cancel a policy within the prescribed period constitutes a "contest" within the meaning of the statute. *See New York Life Ins. Co. v. Hollender*, 38 Cal. 2d 73, 78 (1951) ("[T]he insurer must make its 'contest of the policy' within the prescribed period, either by the institution of a suit to cancel the policy or by setting up misrepresentation or fraud in the procurement of the policy as a defense in an action brought by the insured or the beneficiary.") (emphasis added); *see also* 17 Couch on Ins. § 240:97 (2010) (same); 44 Am. Jur. 2d Insurance § 778

---

are "illegal wagering contracts that lack an insurable interest at inception" and are void *ab initio*. (FAC ¶ 3)

("[I]f, within the contest period, an insurer brings suit to relieve itself from liability under a policy, the insurer has made a contest.").

Defendant does not cite any authority which states that commencement of a lawsuit is an insufficient means to contest a policy. Instead, Defendant argues that the purpose of the contestability statute is to ensure that "life insurers. . . conduct an investigation and discover facts justifying rescission prior to the end of the two year period" (Mem. at 9) and that allowing an insurer to commence an action without discovering facts supporting a rescission claim is incompatible with this purpose (Reply at 6). However, the Court need not grant Defendant's motion to dismiss on this ground in order to support this legislative goal. The requirement, articulated in *Iqbal* and *Twombly*, that a complaint contain more than conclusory statements and legal conclusions ensures that insurers cannot perform an end-run around California's contestability statute by using a lawsuit as a fishing expedition to discover facts showing fraud after the prescribed time period. Indeed, in order for Plaintiff to amend its complaint to cure the deficiencies cited above, Plaintiff will have to show that it had discovered facts that would justify rescission prior to the end of the contestability period. Accordingly, Defendant's motion to dismiss on the ground that Plaintiff failed to comply with California's contestability statute is **DENIED**.

### C. Sanctions Under Rule 11

Defendant asserts that the complaint does not satisfy Fed. R. Civ. P. 11(b) and seeks a sanction of dismissal. (Mem. at 1, 5) However, Defendant did not comply with either Rule 11(c)(2)'s requirement that "[a] motion for sanctions must be made separately from any other motion" or the rule's "safe harbor" requirement, which provides that a party seeking sanctions must give the opposing party twenty-one days after service of the motion to "withdraw or appropriately correct[ ]" the challenged paper, claim, defense, contention, or denial. The safe harbor provision is strictly enforced. *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005). Because Defendant did not comply with the safe harbor provision, Defendant's motion for sanctions is denied.

## IV. **CONCLUSION**

For the reasons discussed above, Defendant's motion to dismiss the First Amended Complaint is **GRANTED**. Plaintiff's First Amended Complaint is **DISMISSED** for failure to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard. The Court grants Plaintiff leave to file a Second Amended Complaint curing the deficiencies identified in this Order. If Plaintiff chooses to file a Second Amended Complaint, it must be filed within 20 days of the entry of this order. Failure to do so will result in a final judgment of dismissal.

**IT IS SO ORDERED.**

DATED: November 5, 2010

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge